UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON


CIVIL ACTION NO. 10-123-KSF

FORTUNE HI-TECH MARKETING, INC.                                   PLAINTIFF


v.                                    **OPINION & ORDER**


JOSEPH M. ISAACS, *et al.*                                         DEFENDANTS

* * * * * * * * * *

Currently before the Court is the motion of the defendants, Joseph M. Isaacs and Fortune

Social, LLC, to dismiss this action for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the

Federal Rules of Civil Procedure.  This motion is fully briefed and ripe for review.  For the reasons

set forth below, the defendants' motion to dismiss will be denied.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff, Fortune Hi-Tech Marketing, Inc. ("Fortune"), is a direct sales company that

markets products and services to end user consumers through Independent Representatives ("IRs").

Formed in 2000, Fortune has adopted the multi-level marketing ("MLM") business model whereby

IRs sell products and services directly to individual customers.  According to Fortune, their

trademarks and service marks - FORTUNE HI-TECH MARKETING and FHTM - have become well

known in the industry and have established goodwill and a solid reputation for quality services and

products provided through Fortune.

In September 2009, Isaacs, a Florida resident, became an IR for Fortune.  Shortly thereafter,

he organized Fortune Social, LLC ("FSL") to operate a website called www.fortunesocial.com (the "Website").  The purpose of the Website was to facilitate networking exclusively among Fortune IRs.  FSL is also the registrant of the domain names of other websites that provide online training to Fortune IRs who are registered members of the Website.  According to Fortune, the Website has misappropriated Fortune's trademarks and service marks and sought to profit from Fortune's good name and reputation.  When Isaacs refused to remove the trademarks and service marks from the Website, Fortune terminated Isaacs.

In April 2010, Fortune filed this civil action against the defendants, asserting the following claims:  misappropriation of mark, reputation and name, intentional interference with existing and prospective contractual relations, violation of Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125, trademark infringement, and unjust enrichment [DE #1].  Fortune has also filed a motion for preliminary injunction [DE #6].  A hearing on that motion is currently set for May 11, 2010.  The Court must first, however, determine whether the exercise of personal jurisdiction over Isaacs, a Florida resident, and FSL, a Florida limited liability company, is appropriate.

II.    ANALYSIS

Fortune "need only make a prima facie showing of jurisdiction."  *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1992).  To meet this burden, they must establish "with reasonable particularity sufficient contacts between [the defendants] and the forum state to support jurisdiction.  *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)(citation omitted).  This Court, when reviewing the defendants' motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, relies on the pleadings and affidavits of the parties and construes the facts in the light most favorable to the nonmoving party.  *See Serras v. First Tenn.*

*Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

In this diversity case, the Court may exercise personal jurisdiction over the defendants only if such jurisdiction is (1) authorized by Kentucky law, and (2) otherwise consistent with the Due Process Clause of the Fourteenth Amendment. *See Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003). Kentucky's long arm statute provides, in pertinent part, as follows:

> (2)(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:
> 1.     Transacting any business in this Commonwealth;
> 2.     Contracting to supply services or goods in this Commonwealth;
> 3.     Causing tortious injury by an act or omission in this Commonwealth;
> 4.     Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivations of substantial revenue within the Commonwealth . . . .

KRS § 454.210(2)(a).

Kentucky's long-arm statute has been construed by courts as coextensive with the limits of due process. *Wilson v. Case*, 85 S.W.3d 589, 592 (Ky. 2002). As explained by the Kentucky Supreme Court, "[i]n practice, the precise language of the statute and the application of its terms are much less important that the simple fact that the statute exists." *Id*. at 592. "Courts have determined that 'the long-arm statute within this jurisdiction allows Kentucky courts to reach to the full constitutional limits of due process in entertaining jurisdiction over non-resident defendants.'" *Id*. (quoting *Mohler v. Dorado Wings, Inc.*, 675 S.W.2d 404, 405 (Ky.Ct.App. 1984)). Thus, personal jurisdiction exists in this case if the defendants have "minimum contacts" with Kentucky "'such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"

*Gateway Press, Inc. v. LeeJay, Inc.*, 993 F.Supp. 578, 580 (W.D.Ky. 1997)(quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Defendants may be subject to either general jurisdiction, where "the defendants contacts with the forum state are of such a continuous and systemic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state," *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989), or specific jurisdiction, where the claims in the case arise from or are related to the defendant's contacts with the forum state. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997). Because Fortune concedes that the defendants are not subject to general jurisdiction, the Court turns its attention to whether or not the defendants are subject to specific jurisdiction.

The Sixth Circuit has established a three-part test to determine if the exercise of specific jurisdiction is proper. First, the defendants must have purposefully availed themselves of the privilege of acting in Kentucky or purposefully caused a consequence in the state. Next, the cause of action must arise from the defendants' actions in Kentucky. Finally, the exercise of jurisdiction must be reasonable. *See Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 628 (6th Cir. 1998); *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968); *Wilson*, 85 S.W.3d at 592.

A. **WHETHER DEFENDANTS PURPOSEFULLY AVAILED THEMSELVES OF THE PRIVILEGE OF ACTING IN KENTUCKY OR PURPOSEFULLY CAUSED A CONSEQUENCE THERE**

A court may not exercise personal jurisdiction if the defendant has not purposefully entered into a connection with the forum state "such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "This

'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitious,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)(citations omitted).

The Defendants argue that they have not purposefully availed themselves to the benefits and protections of Kentucky law for many reasons. As explained in Isaacs' affidavit, none of the alleged activities forming the basis of Fortune's complaint took place in Kentucky. The design and management of the Website takes place outside of the United States. The Website is linked by a server to the World Wide Web, and the Defendants have never controlled, confined, directed, or channeled the Website's activities to Kentucky or any business therein. According to Isaacs, the Website is an informational bulletin board for an international community of individuals who employ the MLM business model, is open to all networking organizations, and encourages the free exchange of useful information within the MLM community. Issacs attests that the primary purpose of the Website is to report industry news, and those desiring to interact with the MLM community on the Website must register as a user to establish a personal blog for that purpose. According to Isaacs, there are approximately 824 registered users, only five of which reside in Kentucky. Finally, Isaacs attests that the Defendants are not authorized to conduct business in Kentucky and have no registered agent for service of process there, nor do the Defendants maintain offices or have employees in Kentucky and have never traveled to Kentucky to conduct business there [DE #13-2].

Fortune, on the other hand, alleges *inter alia* that the Website has targeted Fortune IRs, offering "aggressively priced" user registrations, and attempted to profit by misappropriating Fortune's marks, name and reputation. Fortune alleges that the Website is interactive, requiring users to obtain passwords from the Defendants prior to participating in the Website. Because some

of the registered users are residents of Kentucky, Fortune argues that the Defendants have purposefully availed themselves of the privilege of operating in Kentucky.

Fortune further alleges that the Defendants' efforts to extort money from Fortune, as well as other alleged fraudulent acts, support the exercise of personal jurisdiction in this case. Specifically, Fortune alleges that after being advised to cease using Fortune's marks, Isaacs contacted Fortune with an offer to sell the Website for $2,500,000. According to Fortune, this demand was made by e-mail sent to Fortune's general counsel, who maintains an office in Kentucky. Isaacs also requested to deal directly with the president of Fortune, who resides in central Kentucky. Fortune contends that this amounts to the transaction of business in Kentucky.

When considering cases involving personal jurisdiction resulting from the operation of a website, courts often turn to *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Penn. 1997). The defendant in *Zippo*, Dot Com, registered the domain names "zippo.com," "zippo.net," and "zipponews.com." The websites operating under these names provided information about Dot Com and enabled viewers to purchase new services. In order to access the website and make purchases, Dot Com issued passwords.

Noting that at that time the law governing the exercise of personal jurisdiction based on Internet activities was in its infancy, the district court nevertheless concluded that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." The court then described a "sliding scale" consisting of three general areas:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. . . At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in a foreign

6

jurisdiction. . . The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id*. The district court concluded that Dot Com was subject to personal jurisdiction based on its interactive website (the "middle ground") because it "repeatedly and consciously chose to process Pennsylvania residents' applications and to assign them passwords," thereby purposefully availing itself of the privilege of doing business in Pennsylvania." *Id*. at 1126.

Courts in the Sixth Circuit have followed *Zippo*'s reasoning when considering whether to exercise personal jurisdiction over non-resident defendants based on Internet activities. For instance, in *Neogen*, the plaintiff, Neogen Corporation, was a Michigan company that operated a business involving the development and marketing of various products and services, including diagnostic test kits. *Neogen*, 282 F.3d at 886-87. Neogen operated at www.neogen.com. The defendant, Neo Gen Screening, Inc. ("NGS"), was a Pennsylvania company which performed diagnostic testing of blood samples and operated a website at www.neogenscreening.com. In determining that NGS conducted business in Michigan, the Sixth Circuit noted that NGC provided residents of Michigan with passwords to access information on its website. *Id.* at 888-89. According to the Court, the "granting of passwords to Michigan residents as part of a contract for NGS's services is an interactive usage showing that NGS has intentionally reached out to Michigan consumers and enabled them to use NGS's services from Michigan." *Id*. at 890-91. As a result, the Court concluded that NGS had met the "purposeful availment" portion of the *Mohasco* test. *Id*. at 892.

In a similar case, the Sixth Circuit again found that personal jurisdiction was appropriate as a result of the defendant's alleged misappropriation of intellectual property by use of a website. In

*Bird v. Parsons*, 289 F.3d 865 (6th Cir. 2002), Bird, an Ohio resident, operated a computer software business called Financia, Inc.  A defendant, Parsons, a California resident, registered the domain name "efinancia.com" through defendant Dotster, Inc., a Washington resident.  Bird sued Parsons and Dotson in Ohio, alleging similar claims to this case.  The Sixth Circuit agreed that jurisdiction was appropriate following the reasoning in *Neogen*.

Turning to this case, when construing the allegations in the light most favorable to Fortune, the Court believes that Fortune has established that the Defendants purposefully availed themselves to the rights and benefits of Kentucky law.  Fortune alleges that the Defendants' Website is interactive, allowing its users to take a number of actions, including accessing a "Rewards Mall" and purchasing products through a website called www.bigbrandmall.com.  Users may also utilize websites developed for training Fortune's IRs.  In order to participate in the Website, users must register and obtain a password.  As the Defendants admit, at least five users are residents of Kentucky.

While the Defendants suggest that this small number of Kentucky residents is insufficient to establish personal jurisdiction, the appropriate inquiry is on "the quality of the contacts, not the quantity. . . ." *Neal v. Janssen*, 270 F.3d 328,332 (6th Cir .2001).  Here, the Defendants' contacts include efforts to mislead Kentucky IRs into believing that an affiliation existed between the Defendants and Fortune.  The purpose of this alleged deception was to enable the Defendants to generate revenue from their Website.  Certainly, these contacts are sufficient to determine that the Defendants purposefully availed themselves of the privilege of operating in Kentucky based on the reasoning of *Zippo, Neogen*, and *Bird*.

Moreover, in addition to the interactive nature of the Website, the Defendants' offer to sell

the Website for $2,500,000, after refusing to remove Fortune's marks, justifies the exercise of personal jurisdiction. The Defendants purposefully attempted to conduct business - or extortion if Fortune's allegations are true - in Kentucky, and should not be allowed to hide behind state lines to avoid answering for their actions. Thus, for all these reasons, the Court finds that the Defendants purposefully availed themselves of the privilege of doing business in Kentucky.

**B.     WHETHER FORTUNE'S CLAIMS ARISE FROM DEFENDANTS' CONTACTS WITH KENTUCKY**

"The 'arising from' requirement under the second prong is satisfied when the operative facts of the controversy arise from the defendant's contacts with the state." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723-24 (6th Cir.2000). In other words, the cause of action must have at least a "substantial connection" to the defendant's in-state activities. *Mohasco*, 401 F.2d at 384 n. 27. In this case, there is a clear link between Fortune's allegations and the Defendants' contacts with Kentucky. Fortune alleges that the Defendants have misappropriated its trademarks, name and reputation in an attempt to profit from the sale of services to a targeted base of IRs. The alleged harm to Fortune has occurred at Fortune's headquarters in Kentucky. Thus, Fortune has satisfied this element of the personal jurisdiction analysis.

**C.     WHETHER THE EXERCISE OF JURISDICTION IS REASONABLE**

In the final prong of the analysis, the Court must examine a defendant's overall contacts with the state, considering whether those connections make jurisdiction over the nonresident defendant reasonable. *See Aristech*, 138 F.3d at 629 ("Whether the exercise of jurisdiction is reasonable ultimately depends on whether Kentucky has an interest in resolving the dispute between [the parties].") Because Fortune has satisfied the first two factors, an inference arises that this third factor

9

is also present. *CompuServe*, 89 F.3d at 1267-68. When considering this factor, courts consider "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *American Greeting Corp. v. Cohn*, 839 F.2d 1164, 1169-70 (6th Cir. 1988).

While it may be burdensome for the Defendants to defend a suit in Kentucky, the Court finds that based on the Defendants' alleged internet activities, they knew they were making a substantial connection with Kentucky, one they hoped would work to their benefit. Furthermore, Kentucky does have an interest in resolving the dispute between Fortune, a Kentucky company, and the Defendants. Finally, Fortune has an interest in protecting its trademarks, name and goodwill and has suffered harm here in Kentucky. Thus, considering the pleadings and allegations in a light most favorable to Fortune, the Court finds that, on these facts, there is a substantial enough connection between the Defendants and Kentucky to make it reasonable for a Kentucky court to assert personal jurisdiction over them.

## III.     CONCLUSION

Accordingly, the Court, being fully and sufficiently advised, hereby **ORDERS** that the Defendants' motion to dismiss [DE #13] is **DENIED**.

This May 10, 2010.



**Signed By:**

*__Karl S. Forester__*   K S F

**United States Senior Judge**