UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| **FORTUNE HI-TECH MARKETING, INC.,** | ) |
| | ) |
| **PLAINTIFF,** | ) |
| | ) |
| VS. | ) CASE NO. 5:10-CV-123-KSF |
| | ) |
| | ) |
| **JOSEPH M. ISAACS, et al.,** | ) |
| | ) |
| **DEFENDANTS.** | ) |
| | ) |

**RESPONSE TO ORAL MOTION TO COMPEL ARBITRATION**

***** ***** ***** *****

Plaintiff, Fortune Hi-Tech Marketing, Inc. ("Fortune"), submits this memorandum in opposition to the oral motion to compel arbitration made by Defendants, Joseph M. Isaacs ("Isaacs") and Fortune Social, LLC ("FS") (collectively, "Defendants").

**I.
INTRODUCTION**

Fortune has moved the Court for preliminary injunctive relief concerning the unauthorized and improper use of its trade names and logos by Defendants. Rather than respond to this motion, Defendants submitted an "oral motion" to compel arbitration during the hearing on the motion for preliminary injunction. This "oral motion" should be denied as the contract provisions cited by Defendants have nothing to do with this case. Further, even if the provisions applied, they contain a provision specifically allowing Fortune to move for preliminary injunctive relief outside of any arbitration proceedings. Thus, Defendants' "oral motion" should be denied, and Fortune's motion for preliminary injunctive relief should be granted.

## II.
## RELEVANT FACTS

Isaacs purchased the domain name www.fortunesocial.com (the "Website") in October 2009[1] and began using certain trademarks and trade names of Fortune. The purpose of the Website was to facilitate a social networking system for Fortune's independent representatives ("IRs") similar to www.facebook.com or www.linkedin.com.[2] Fortune IRs are independent contractors who market and sell certain products or services offered through Fortune, and the IRs earn commissions and bonuses based upon these sales.[3]

Fortune became aware of the Website in 2010. Upon investigation, Fortune determined that Isaacs was using Fortune's valuable trademarks and trade names to promote his own product, i.e., the social networking system included in the Website. Further investigation has revealed that Isaacs also utilized websites located at www.fhtmwebconnect.com and www.fortunewebinars.com (the latter of which appears to have directly linked to the Website) to promote other networking and "web meeting" products. Fortune demanded that Isaacs discontinue the use of the trademarks, trade names and websites in promoting his social networking and web meeting offerings. Isaacs refused to do so, instead offering to sell the

---

[1] "Whois" domain name search result retrieved on April 7, 2010, at http://reports.internic.net/cgi/whois?whois_nic=fortunesocial.com&type=domain, a print out of which is attached as Exhibit A.

[2] *See* Blog Post, "Thank you Fortune Social," http://www.fortunesocial.com/fortune-hi-tech-blogs/thank-you-fortune-social.html, retrieved on April 7, 2010, a copy of which is attached as Exhibit B.

[3] *See e.g.,* Fortune's Memorandum in Support of Motion for Preliminary Injunction at p. 1. [DE 6-1.]

Website to Fortune for $2.5 million.  Fortune refused to repurchase its own property and filed this action against Isaacs and FS.[4]

Prior to creating the Website, Isaacs also agreed to become an IR.  In becoming an IR, Isaacs has argued that he agreed to the terms set forth in an "Application Agreement" and the "Policies and Procedures" documents.[5]  Both the Application Agreement and Policies and Procedures expressly refer to the relationship between IR and Fortune in terms of selling products and services and earning commissions.

The Application Agreement specifically notes that it contains "REPRESENTATIVE TERMS AND CONDITIONS."  (Application Agreement, p. 1.)  These "terms and conditions" apply only to the applicant IR (in this case, Isaacs) and what is required and/or expected from the IR when selling products and services offered through Fortune.  For instance, paragraph 1 of the Application Agreement states:

> 1.   I understand that as a Fortune Hi-Tech Marketing, Inc. ("FHTM") Representative ("IR")
>
>    A.   I must be of legal age of consent in the state which he/she (sic) resides.
>
>    B.   I have the right to offer for sale FHTM products and services in accordance with these Terms and Conditions.

---

[4]   The Website states at the bottom: "Copyright 2009-2010 Fortune Social, LLC – All Rights reserved."  Further, FS is the designated Registrant for www.fhtmwebconnect.com and www.fortunewebinars.com.  *See* "Whois" domain name search results for www.fhtmwebconnect.com and www.fortunewebinars.com, retrieved on April 7, 2010, copies of which are collectively attached as Exhibit C.  For these and other reasons, Fortune named FS as a Defendant to this action.  Isaacs argued at the May 11, 2010, hearing on Fortune's Motion for Preliminary Injunction that FS is merely a "doing business as" entity and is not registered, but this seems inconsistent with FS's actions and the representations that it is a limited liability company.

[5]   A copy of the "Application Agreement" provided by Isaacs is attached as Exhibit D.  A copy of the "Policies and Procedures" provided by Isaacs is attached as Exhibit E.  Although Isaacs has failed to provide copies of his agreements, Fortune assumes for the purpose of this motion that Isaacs has actually executed and agreed to those documents.

> C.  I have the right to enroll persons in FHTM.
>
> D.  I will assist, train, and motive the Representatives in my downline marketing organization.
>
> E.  I will comply with all federal, state, county and municipal laws, ordinances, rules and regulations, and shall make all reports and remit all withholdings or other deductions as may be required by any Federal, state, county or municipal law, ordinance, rule or regulation.
>
> F.  I will perform my obligations as a Representative with honesty and integrity.
>
> G.  I will only use the sales contracts and order forms which are provided by FHTM for the sales of its goods and services, and I will follow all Policies and Procedures established by FHTM for the completion and processing of such contracts and orders.

(Application Agreement, p. 1.) Throughout the document, it is clear that the Application Agreement concerns the relationship between the IR, Fortune, and the selling of products and services offered <u>through</u> Fortune, <u>not</u> the use of Fortune's trademarks and trade names to sell an individual's own products independent of and without the knowledge of Fortune.

The Policies and Procedures operate within the same parameters. Specifically, the Policies and Procedures address the requirements and effects of becoming an IR; (2) the basics of selling products and services and receiving commissions; (3) the responsibilities of being an IR; and (4) the effects of canceling or terminating their relationship with Fortune. The Policies and Procedures have no application to an individual using Fortune's trademarks and trade names to confuse consumers into purchasing his or her own products.

The Application Agreement and Policies and Procedures also include arbitration provisions that apply to the relationship between the IR and Fortune. The Application Agreement states:

> 13.  This Agreement will be governed by and construed in accordance with the laws of the State of Kentucky. Except as set forth in the FHTM Policies and Procedures, all disputes and claims relating to FHTM, the Representative

4

> Agreement, the FHTM Marketing and Compensation Plan or its products and services, the rights and obligations of an independent Representative and FHTM, or any other claims or causes of action relating to the performance of either as independent Representative of FHTM under the Agreement or the FHTM Policies and Procedures shall be settled totally and finally by arbitration in Lexington, Kentucky….

(Application Agreement, p. 3.)  The Policies and Procedures contain a similar provision in Section 8.4 of that document:

> Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

(Policies and Procedures, p. 35.)

Shortly after filing this action, Fortune moved the Court for a preliminary injunction preventing Defendants from continuing to use the websites, trademarks and trade names. Defendants moved to dismiss the action on personal jurisdictional grounds, to which Fortune responded. In their Reply in support of their motion to dismiss, Defendants suggested for the first time that arbitration provisions contained in the Application Agreement and Policies and Procedures deprived this Court of subject matter jurisdiction. Defendants' motion was denied.

A hearing was held on May 11, 2010, regarding Fortune's motion for preliminary injunction. Despite having failed to respond to the motion for preliminary injunction, and despite having failed to file a motion to compel arbitration or similar motion, Defendants orally raised the arbitration provisions contained in the Application Agreement and Policies and Procedures in response to Fortune's motion for preliminary injunction.[6]

---

[6] As stated at the May 11, 2010 hearing, Defendants' argument for arbitration should be denied as they have failed to make any proper motion regarding the matter.

## III.
## ARGUMENT

In a last gasp attempt to avoid answering Fortune's claims, Defendants have seized upon two inapplicable contract provisions. The basis for Defendants' argument allegedly stems from a statement by Fortune in its memorandum in opposition to Defendants' motion to dismiss. After alleging that the Website "has… displayed some of the logos of Fortune's product vendors," Fortune stated in a footnote that "[i]t should also be noted such display of the logos of these third party vendors are strictly prohibited under Fortune's agreements with the third-party vendors as well as the Policies and Procedures that govern IR activities."[7] From this, and Fortune's allegation that at least some of Defendants' improper activities occurred contemporaneously with Isaacs's status as an IR, Defendants conclude that the arbitration provisions in the Application Agreement and Policies and Procedures deprive the Court of jurisdiction.[8]

Defendants' arguments have no merit. First and foremost, the arbitration provisions in the Application Agreement and Policies and Procedures have no application to the claims before the Court. Second, even if arbitration provisions were applicable, they would not operate to prevent Fortune's motion for preliminary injunction due to (a) the express terms of the provisions themselves and (b) established case law.

**A.  Applicable Law**

As stated in the Agreement and Policies and Procedures, the agreement to arbitrate is governed by the Federal Arbitration Act (the "FAA"). The FAA states that

---

[7]  Fortune's Memo. in Opp. to Mot. to Dismiss, p. 3.

[8]  This argument is taken from Defendants' Reply in support of their motion to dismiss. As Defendants have refused to offer a written response to the motion for preliminary injunction or file a motion to compel, Fortune is largely left guessing as to Defendants' arguments, if any.

> A written provision in… a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof… shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  A similar requirement is set forth by KRS 417.050, Kentucky's governing statute as to the validity of arbitration agreements:

> A written agreement to submit an existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable, save upon such grounds as exist at law for the revocation of any contract.

KRS 417.050.  The party seeking to enforce an agreement to arbitrate bears the initial burden of establishing the existence of such an agreement, and only after "prima facie evidence of the agreement has been presented, [does] the burden shifts to the party seeking to avoid the agreement."  *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 857 (Ky. 2004), *citing Valley Constr. Co. v. Perry Host Management Co.*, 796 S.W.2d 365, 368 (Ky. App. 1990).

**B.     The arbitration provisions have no application to Fortune's claims in this action.**

Fortune's statement in its Memorandum in opposition to the motion to dismiss was made regarding Defendants' improper use of *third party* logos and trade names.  Fortune's claims in the Complaint concern Defendants' misappropriation and abuse of *Fortune*'s logos, trademarks and trade names, and Defendants' interference in *Fortune*'s business relationships.  Thus, Defendants have failed to offer any reason why Fortune's statement regarding other improper actions of Defendants have any impact on the claims presented in this case.

Defendants have failed to provide any reason why the Application Agreement and Policies and Procedures, which apply only to the relationship between Fortune and an IR, have any application to Fortune's claims against the Defendants.  Specifically, Fortune's claims concern Defendants' misappropriation of Fortune's trademarks, logos and trade names in

7

connection with Defendants' offering of their own products and services – specifically, the social networking service provided by the Website and the "webinars" and "meeting tools" offered through the Website, www.fortunewebinars.com and www.fhtmwebconnect.com. Defendants' improper actions have nothing to do with Isaacs's former status as an IR, as Defendants' actions have nothing to do with selling products and services offered through Fortune in exchange for commissions.

In similar situations, federal courts have held that claims arising outside of the scope of contractual provisions should not be subject to any arbitration provisions therein. The proper analysis is whether the contract containing the arbitration provision and the claims asserted in the civil action are separate. *See e.g., Baquie v. Eastern Energy Corp.*, Case No. 1:09-CV-00121-TBR, 2010 WL 1416557, at *6 (W.D. Ky. Apr. 2, 2010). Specifically,

> The test is whether an action could be maintained without reference to the contract or relationship at issue. If the action could be brought without reference to the contract then it is likely outside the scope of the arbitration agreement.

*Id.*, citing *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003). Torts (such as those alleged by Fortune in this instance) lie outside of arbitration provisions unless they "touch matters" covered by the arbitration agreement. *See id.*, quoting *Fazio*, 340 F.3d at 395.

In this instance, the torts asserted by Fortune concern Defendants' misappropriation of trademarks and logos for the purpose of selling their own products -- not Fortune's products as described in the Application Agreement and Policies and Procedures. The gulf between this action and the arbitration provisions in the Application Agreement and Policies and Procedure is easily identified. Specifically, resolution of Fortune's claims against Defendants will not be affected in any way by the Application Agreement, the Policies and Procedures, or any part of Isaacs being an IR. The fact that Isaacs decided to become an IR has nothing to do with Isaacs deciding to sell his own products and services by improperly piggybacking on the value and

name of Fortune.  The fact that Isaacs could have received commissions for the sale of products through Fortune has nothing to do with Isaacs attempting to lure Fortune's IRs to his websites through the use of Fortune's marks and logos in order to sell his own services and products.  Indeed, the fact that Fortune had to discover and investigate the Website illustrates the fact that Fortune had nothing to do with Isaacs's activities through the Website, www.fortunewebinars.com and www.fhtmwebconnect.com.  Further, Isaacs's decision to transform the websites into vehicles to disparage Fortune and disseminate false information regarding, *inter alia*, a fake "Complaint" against Fortune only supports the separation between the websites and Fortune.  Given this separation, Defendants cannot argue that two arbitration provisions relating to a working relationship between Fortune and Isaacs somehow governs actions taken by Defendants completely independent from and unknown to Fortune.

Defendants may attempt to forestall the realization of the obvious discrepancy between their argument and the facts of this case by arguing that the Court lacks the ability to determine that Fortune's claims have nothing to do with the Application Agreement or the Policies and Procedures.  "[T]he question of arbitrability… is undeniably an issue for judicial determination," however.  *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986) (addressing "whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance").  "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."  *Id*., citing *Steelworkers v. Warrior & Gulf Navigation Co.* 363 U.S. 574, 582-583 (1960).  "District courts have the authority to decide, as a threshold matter, whether an issue is within the scope of an arbitration agreement."  *Baquie,* 2010 WL 1416557 at *6.

Neither arbitration provision cited by the Defendants addresses arbitrability, and Defendants have thus far only recited portions of the provisions and their conclusion that the claims must be arbitrable. Indeed, it is clear that Defendants have failed to meet their *prima facie* burden of proving that the arbitration provisions apply as they have only mustered a recitation of the arbitration provisions and their bare conclusions that the provisions apply in this situation. Thus, it is within the Court's province to determine arbitrability of Fortune's claims in this case, and the Court should conclude that neither arbitration provision applies.[9]

### C. Even if one of the arbitration provisions applied to Fortune's claims, Fortune's motion for preliminary injunction should still be granted.

As stated above, the Application Agreement and the Policies and Procedures, and specifically the arbitration provisions contained therein, have nothing to do with Fortune's claims or Defendants' actions subject to this case. Even if the arbitration provisions applied, however, Defendants have offered no reasons why the preliminary injunction should not be issued.

The paragraph following the paragraph containing the arbitration provision in the Policies and Procedures states:

> Nothing in these Policies and Procedures shall prevent FHTM from applying to and obtaining from any court having jurisdiction a writ of attachment, a temporary injunction, preliminary injunction, permanent injunction or any other relief available to safeguard and protect FHTM's interest prior to, during or

---

[9] At the May 11 hearing, the Court expressed an interest in whether the issue of arbitrability is properly decided by the arbitrator(s) rather than the Court, and specifically referred to a decision involving the successor to Amway. Fortune believes the case to which the Court was referring is *Quixtar, Inc. v. Brady*, 328 Fed.Appx. 317 (6th Cir. 2009). The issue in *Quixtar*, however, was not whether the issue of arbitrability is left to the arbitrator, but whether the respondent in that case had waived a judicial determination of arbitrability by submitting the issue to the arbitrator after the arbitration proceeding was initiated. The court declined to undertake what it characterized as an interlocutory review of the decision of the arbitrator. Here, Fortune has not waived the issue of arbitrability and believes that it is within the Court's province to decide the issue.

>following the filing of any arbitration or other proceeding or pending the rendition of a decision or award in connection with any arbitration or other proceeding.

(Policies and Procedures, p. 35.) Thus, even if it was proper for the Court to hold that the arbitration provisions apply in this case, Fortune is permitted under the express terms of the provision to move for and be granted a preliminary injunction.

Despite the express terms of the provisions upon which they purport to rely, Defendants may argue that it is the arbitrator(s), not the Court, that should grant the injunctive relief. Not only is this argument contrary to the express terms of the provisions, it is also contrary to established case law. It is widely held that federal courts retain jurisdiction to enter injunctive relief even in actions that are submitted to arbitration. *See e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano*, 999 F.2d 211 (7th Cir. 1993); *Blumenthal v. Merrill Lyn, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049 (2d Cir. 1990). Thus, even if Defendants were correct in arguing that the provisions should apply, the motion for preliminary injunction should still be granted.

## IV.
## CONCLUSION

For the foregoing reasons, Defendants' "oral motion" to compel arbitration should be denied, and Fortune's motion for preliminary injunction should be granted.

>Respectfully submitted,
>
>  /s/ Brian M. Johnson
> Brian M. Johnson
> Jason T. Ams
> Greenebaum Doll & McDonald PLLC
> 300 West Vine Street, Suite 1100
> Lexington, Kentucky  40507
> Telephone:    859-231-8500
> Facsimile:    859-255-2742
>
> COUNSEL FOR PLAINTIFF

11

**CERTIFICATE OF SERVICE**

I, Brian M. Johnson, hereby certify that on this 12th day of May, 2010, I filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing e-mail to the following:

- **Fred E. Fugazzi , Jr**
  bfugazzi@bowlesrice.com

- **David Leightty**
  dleightty@earthlink.net

- **John Thomas Rawlings , Jr**
  trawlings@bowlesrice.com

- **Edward J. Smith**
  esmith@sglfirm.com,kburke@sglfirm.com

I further certify that I caused the foregoing to be served via U.S. Mail upon the following, who requires manual noticing:

George W. Cochran
Smith, Greenberg & Leightty PPLC
2321 Lime Kiln Lane, Suite C
Louisville, KY 40222


       /s/ Brian M. Johnson
       COUNSEL FOR PLAINTIFF

3905885_1.DOC